FILED

James J. Waldron, Clerk

DEC 21 2016

U.S. Bankruptcy Court, Newark NJ
BY _____ Deputy

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

In Re:

G-I HOLDINGS, INC.  and ACI Inc.,

      Debtors.

ASHLAND INC., INTERNATIONAL SPECIALTY
PRODUCTS, INC., AND ISP ENVIRONMENTAL
SERVICES, INC.,

               Plaintiff(s),

v.

G-I HOLDINGS INC., BUILDING MATERIALS
CORPORATION OF AMERICA d/b/a GAF
MATERIALS CORPORATION, GAF
CORPORATION, JOHN AND JANE DOES 1-20
AND ABC COMPANIES 1-20,

             Defendant(s).

Chapter 11

Case No.: 01-30135(RG)
Case No.: 01-38790(RG)
Jointly Administered

Adv. No.:   15-2379(RG)

**OPINION**

**APPEARANCES:**

Riker, Danzig, Scherer, Hyland & Perretti LLP
BY:  DENNIS J. O'GRADY, ESQ.
    MARK E. HALL, ESQ.
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
*Co-Counsel to Defendants G-I Holdings Inc., Building Materials Corporation of America and
GAF Corporation*

Quinn Emanuel Urquhart & Sullivan, LLP
BY: ANDREW J. ROSSMAN, ESQ.
    SCOTT C. SHELLEY, ESQ.
    SYLVIA E. SIMSON, ESQ.
    JONATHAN B. OBLAK, ESQ.
51 Madison Avenue, 22nd Floor
New York, New York 10010
*Co-Counsel to Defendants G-I Holdings Inc., Building Materials Corporation of America and GAF Corporation*


Gibbons P.C.
BY: MICHAEL R. GRIFFINGER, ESQ.
    CAMILLE V. OTERO, ESQ.
    BRETT S. THEISEN, ESQ.
    WILLIAM S. HATFIELD, ESQ.
    JEFFREY A. POLUMBO, ESQ.
One Gateway Center
Newark, New Jersey 07102-5310
*Attorney(s) for Plaintiffs Ashland Inc., International Specialty Products, Inc., and ISP Environmental Services, Inc.*


Rosemary Gambardella, Bankruptcy Judge


MATTER BEFORE THE COURT

Before the Court is a Motion filed by Ashland, Inc., International Specialty Products, Inc. ("ISP"), ISP Environmental Services, Inc. ("IES") (collectively "Ashland" or "Plaintiffs") to Remand a certain proceeding to the Superior Court of New Jersey, Law Division, Morris County. A Response in Opposition was filed by G-I Holdings, Inc. ("G-I"), Buildings Materials Corporation of America ("BMCA"),[1] and GAF Corporation ("GAF") (collectively "G-I" or "Defendants"), and a Reply was filed by Plaintiffs. On June 2, 2016 the Court held a hearing on the Motion for Remand. At the conclusion of the hearing, the Court reserved decision. The following constitutes this Court's findings of fact and conclusions of law.

---

[1] On or about January 26, 2016, BMCA changed its name to Standard Industries, Inc. *See* Letter from Mark E. Hall, Esq., dated March 1, 2016, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 21.

STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

This dispute arises in connection with Defendants' potential liability for remediation of a Superfund site located in Linden, New Jersey (the "LCP Site"),[2] and Plaintiffs' claim seeking indemnification from Defendants for costs and expenses paid by Plaintiffs or asserted against them by governmental entities or third parties related to the LCP Site, based on an Indemnification Agreement between the parties.

### A. Corporate History

GAF Corporation ("GAF") G-I's predecessor, owned and conducted operations at the LCP Site from the 1950s until it sold the LCP Site in 1972.

In 1989, GAF was liquidated, and its liabilities were transferred to five separate entities: Dorset Inc. ("Dorset"), GAF Building Materials Corporation (formerly known as Edgecliff Inc.), Merick Inc., Perth Inc., and Clover Inc. According to G-I, Dorset received "all the assets and liabilities, known and unknown, relating to [GAF's] acetylenic chemicals, surfacetants, specialty chemicals, organometalics, mineral products, industrial filters and filter vessels business (collectively, the 'Chemical Businesses')," while GAF Building Materials Corporation, formerly known as Edgecliff Inc., received "all the assets and liabilities, known and unknown, relating to [GAF's] commercial and residential roofing materials business."[3]  *See* Motion to Dismiss Adversary Proceeding at 6, *Ashland Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 12 (citing the 1989 Liquidation Plan).  To effectuate the Liquidation Plan, on April 10, 1989, GAF entered into instruments of Assignment and Assumption with Dorset and GAF Building

---

[2] The LCP Site is a twenty-six-acre property located in Linden, New Jersey that was designated a high-priority Superfund site by the federal government in 1998 based on decades-old releases of hazardous substances.
[3] "[The t]hree other companies – Merick Inc., Perth Inc., and Clover Inc. – acquired [GAF's] broadcasting, insurance, and export operations, respectively." *Id.*

Materials Corporation, which transferred, in relevant part, "100% of the liabilities arising out of ... environmental claims arising out of plants currently operating in the Chemical Businesses" to Dorset, and "100% of all liabilities arising out of ... environmental claims from plants no longer operating and from oil and waste pollution" to GAF Building Materials Corporation. *Id.* at 7.

Ashland claims that the liabilities in connection with the LCP Site were transferred to Edgecliff Inc., which later became GAF Building Materials Corporation, because such liability fell under the umbrella of "environmental liabilities associated with plants that were no longer operating," such as the LCP Site, whereas G-I claims the liabilities in connection with the LCP Site were transferred to Dorset, because such liability is related to the Chemical Businesses. Ashland asserts here that ISP and IES were later incorporated in 1991 as subsidiaries of GAF, and thus ISP and IES were never in the corporate lineage of Edgecliff Inc./GAF Building Materials (one of the Defendant-Indemnitors) which assumed responsibility for the LCP Site before ISP and IES were even formed. G-I on the other hand takes the position that none of the G-I Defendants are responsible for any environmental liabilities or obligations at Linden as these liabilities and obligations were assumed by IES in 1991 and that even if these liabilities resulted in G-I following the series of corporate transactions referred to herein, which G-I claims they did not, these liabilities were discharged in G-I's bankruptcy case.

Subsequently, in 1989, GAF Chemicals Corporation ("GAF Chemicals"), a subsidiary of GAF, merged with Dorset. G-I claims that because Dorset acquired liability in the 1989 Liquidation, liability in connection with the LCP Site was again transferred to GAF Chemicals when it merged with Dorset.

In 1991, International Specialty Products, Inc. ("ISP") and ISP Environmental Services, Inc. ("IES") were incorporated as subsidiaries of GAF Chemicals. On May 8, 1991, GAF

Chemicals, GAF, and ISP 9 Corporation ("ISP 9")[4] entered an agreement whereby ISP 9 assumed certain liabilities and obligations of GAF Chemicals, including "[a]ll liabilities and obligations relating to the manufacture and sale of specialty chemicals at Linden, NJ, known and unknown, contingent or otherwise, including liabilities for the remediation of the Linden site..." (the "1991 Agreement").  Additionally, the 1991 Agreement stated that IES "shall indemnify, defend, and hold harmless [GAF Chemicals], GAF and its other subsidiaries from and against any and all [liabilities and obligations described in the 1991 Assumption Agreement Schedule] and any and all liabilities, costs and expenses in connection with any investigations, claims, actions, suits or proceedings arising out of or resulting from the conduct of any business, ownership or any assets or incurrence of any liabilities or obligations on and after May 9, 1991 by [IES]." *Id.* at 1.

Therefore, G-I alleges that IES assumed all GAF and GAF Chemicals' liabilities, including those associated with the LCP Site.  Plaintiffs allege, conversely, that because liability originally passed from GAF to GAF Buildings Materials Corporation, and not to Dorset/GAF Chemicals, liability in connection with the LCP Site was not transferred to ISP and IES in the 1991 Agreement.

In 1994, GAF Buildings Materials Corporation formed a new corporation as a wholly-owned subsidiary, known as Building Materials Corporation of America (now Standard Industries, Inc.) ("BMCA").  BMCA, which is also an indirect subsidiary of G-I Holdings, is the primary operating subsidiary and principal asset of G-I Holdings.  BMCA acquired the operating assets and certain liabilities of GAF Building Materials Corporation's roofing commercial and residential roofing materials business.  G-I asserts that BMCA did not assume any liabilities

---

[4] ISP 9 later changed its name to IES.

associated with "closed manufacturing facilities," and therefore cannot be held liable in connection with the LCP Site.

On October 18, 1996, GAF Corporation (including its successor "GAF") G-I, G Industries Corp., GAF Chemicals, and ISP Holdings Inc. (the parent of ISP and IES at the time) entered into an indemnification agreement in connection with certain "Spin Off Transactions" involving GAF and its subsidiaries (the "Indemnification Agreement"). Section 2.2(a) of the Indemnification Agreement entitled "Indemnification and Release" provides:

> GAF and G-I [] shall jointly and severally indemnify, defend and hold harmless ISP Holdings, its Post Spin Subsidiaries and each of their respective present and future Representatives and Affiliates from and against all GAF Liabilities and any and all Indemnifiable Losses of ISP Holdings, its Post Spin Subsidiaries and each of their respective Representatives and Affiliates arising out of or due to, directly or indirectly, the GAF Liabilities, whether such GAF Liabilities arose before, or arise after, the Spin Off Date.

*See* Appx. 6, Affidavit of Robin E. Lamkin, Exh. A.

As part of the spin-off transactions, ISP Holdings and its subsidiaries, including IES and ISP, were spun off from the GAF Entities. At that time, Samuel J. Heyman ("Heyman") owned 96% of ISP Holdings and its subsidiaries.[5] On or around August 23, 2011, Ashland Inc. ("Ashland")[6] acquired ISP Holdings and its subsidiaries, and is currently the parent company of ISP and IES.

## B. G-I's Bankruptcy filing and Confirmation of the Plan of Reorganization

On January 5, 2001, G-I Holdings, a Delaware corporation with its principal place of business in the State of New Jersey, filed a voluntary petition for relief under Chapter 11 of the

---

[5] After the conclusion of the confirmation hearing on November 7, 2009, Mr. Heyman, the Plan Sponsor, died of natural causes. Subsequently, Ronnie Feuerstein Heyman, Mr. Heyman's wife, received all of the same signatory powers as Mr. Heyman pursuant to appropriate corporate resolutions.
[6] Ashland is a leading global specialty chemical company incorporated under the laws of the State of Kentucky.

Bankruptcy Code.   Chapter 11 Voluntary Petition, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 1.  The Court's docket entries for the same day reflect that the first meeting of creditors was scheduled for 9:00 a.m. on January 31, 2001 and that the last day to assert claims of non-dischargeability was April 2, 2001.  *Id.*  On August 3, 2001, ACI, Inc. ("ACI"), a subsidiary of G-I, also filed a voluntary petition for relief under Chapter 11.  Chapter 11 Voluntary Petition, *In re ACI, Inc.*, Case No. 01-38790 ECF No. 1.  On October 10, 2001, this Court entered an Order directing the joint administration of the G-I and ACI bankruptcy cases.  Order Directing Joint Administration of Chapter 11 Cases, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 630.

The Official Committee of Unsecured Creditors (hereinafter "Committee") was appointed on January 18, 2001 by the United States Trustee pursuant to § 1102(a) of the Bankruptcy Code to represent those individuals who allegedly suffered injuries related to asbestos exposure from products manufactured by the predecessors of G-I.  *See* 11 U.S.C. § 1102(a).   On October 10, 2001, this Court appointed C. Judson Hamlin as the Legal Representative, a fiduciary to represent the interests of persons who hold present and future asbestos-related claims against G-I.

On August 21, 2008, G-I filed a Joint Plan of Reorganization.  Chapter 11 Plan, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 8190.  After a number of modifications to the Plan, G-I filed an Eighth Amended Joint Plan of Reorganization on October 5, 2009.  Eighth Amended Chapter 11 Plan, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 9644 (the "Plan" or "Confirmed Plan").   The District Court for the District of New Jersey and this Court held hearings concerning confirmation of the Plan on September 30, 2009, October 5, 6, and 15, 2009, and November 7, 2009.  Hearing Transcripts, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF Nos. 9708-12.

On November 12, 2009, the District Court for the District of New Jersey, by Chief Judge

Garrett Brown, and this Court entered an Order Confirming the Eighth Amended Joint Plan of

Reorganization of G-I Holdings Inc. and ACI Inc. (the "Confirmation Order") pursuant to

Chapter 11 of the Bankruptcy Code. Order Confirming Eighth Amended Joint Plan of

Reorganization of G-I Holdings Inc. and ACI Inc., *In re G-I Holdings, Inc.*, Case No. 01-30135,

ECF No. 9787 ("Confirmation Order"). The Plan became effective on November 17, 2009, as

described in the November 20, 2009 Notice of Plan Confirmation ("Confirmation Notice").

Notice of (A) Entry of Order Confirming Eighth Amended Joint Plan of Reorganization and (B)

Occurrence of Effective Date, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 9825.

The 1996 Indemnification Agreement, an executory contract, was assumed by G-I when

the Plan was confirmed.

The discharge provision of the Confirmation Order reads as follows:

> In accordance with and not in limitation of sections 524 and 1141 of the
> Bankruptcy Code and, except as provided in the Plan, upon the Effective Date, all
> claims against the Debtor's estates and the Reorganized Debtors shall be, and
> shall be deemed to be, discharged in full, and all holders of Claims shall be
> precluded and enjoined from asserting against the Debtors' estates and the
> Reorganized Debtors, or any of their assets or properties, any other or further
> Claim based upon any act of omission, transaction, or other activity of any kind or
> nature that occurred prior to the Effective Date, whether or not such holder has
> filed a proof of Claim. Upon the Effective Date, all Entities shall be forever
> precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from
> prosecuting or asserting any such discharged Claim against the Debtors' estates
> and Reorganized Debtors.

Confirmation Order, *supra*, at ¶ 76. Thus, the Confirmation Order provided that all Claims

against the Reorganized Debtors would be discharged, and that all holders of such claims would

be barred from asserting them against Reorganized G-I. *Id.*

Any claimants holding Claims were also

Permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability pursuant to the Plan against the … Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors or the Reorganized Debtors …

*Id.* ¶ 79.

The Confirmation Order defined "claims" as

a "claim" as defined in section 101(5) of the Bankruptcy Code, against G-I or ACI, whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim; (ii) any Environmental Claim, whether or not it constitutes a "claim" under section 101(5) of the Bankruptcy Code; and (iii) any rights to any equitable remedy.

*Id.* at Ex. A., ¶ 1.1.43. *See also* Confirmed Plan, *supra*, at 8, § 1.1.43.

Pursuant to the Confirmed Plan, G-I assumed the Indemnification Agreement. Part VI of the Confirmation Order (Executory Contract and Unexpired Lease Provisions and Related Procedures) notes, in relevant part: "Unless a proof of claim was timely filed within respect thereto, all cure amounts and all contingent reimbursement or indemnity claims for prepetition amounts expended by the non-debtor parties to assumed executory contracts and unexpired leases are discharged by the entry of this Confirmation Order." Confirmation Order, *supra*, at ¶ 25; *see also id.* Art. VII, Section 7.1-7.3.

Section 11.1 of the Plan further states in relevant part:

Retention of Jurisdiction. The Bankruptcy Court shall retain jurisdiction and retain all exclusive jurisdiction it has over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the following:

(a) to interpret, enforce, and administer the terms of the Plan, the Plan Documents (including all annexes and exhibits thereto), and the Confirmation Order.

9

> (b) to resolve any matters related to the assumption, assignment, or
> rejection of any executory contract or unexpired lease to which a
> Debtor is a party or with respect to which a Debtor may be liable and
> to hear, determine and, if necessary, liquidate, any claims arising
> therefrom…
>
> …
>
> (o) to determine the scope of any discharge of any Debtor under the Plan
> or the Bankruptcy Code.

Confirmed Plan, *supra*, at § 11.1. *See also* Confirmation Order, *supra*, at ¶ 97.

Ashland did not file a proof of claim in G-I's bankruptcy. Ashland alleges that it was not required to file a Proof of Claim because indemnification claims under the Indemnification Agreement are not "claims" as defined by the Confirmed Plan. Additionally, Ashland asserts that because it did not acquire IES and ISP until 2011, it was unable to timely file a Proof of Claim in G-I's bankruptcy case. G-I claims, conversely, that any claim Ashland might assert against it was discharged under the Confirmed Plan.

## C. Investigation of the LCP Site

Plaintiffs assert that beginning in or about 1994, prior to entry of the Indemnification Agreement and G-I's Bankruptcy Petition, the EPA began investigating the LCP Site for environmental contamination. In 1998, before the Petition Date, the EPA sent information requests to GAF and other parties regarding the LCP Site, and sought commitments to investigate and study remediation options for the LCP Site. Plaintiffs assert here that "on information and belief" Heyman, who along with members of his family owned and controlled both IES and GAF at the time, volunteered IES to enter into an Administrative Order on Consent ("AOC") for Remedial Investigation and Feasibility Study ("RI/FS") with the EPA. Ashland claims that the EPA misidentified IES as a responsible party, rather than G-I, but because Heyman controlled both IES and GAF at that time, the misidentification was not remedied. The

EPA issued a Record of Decision for the cleanup of the LCP Site in 2014, estimating costs for the site cleanup at $36.3 million. *See* Appx. 3, ¶ 3. Subsequently, the EPA issued a Unilateral Administrative Order ("UAO") for the Remedial Design to IES and Praxair, Inc. for the LCP Site, which became effective June 26, 2015, and required IES to conduct and complete the remedy set forth in the Record of Decision. Because New G-I has not assumed responsibility for this expense, Plaintiffs assert that they have expended, and may be ordered to continue to expend, significant sums of money to investigate and remediate contamination at and from the LCP Site.

In or around 1999, after the Indemnification Agreement, but before the Petition Date, the National Oceanic and Atmospheric Administration ("NOAA") and the U.S. Department of the Interior ("DOI") began to investigate the potential impacts and releases of hazardous substances at and from the LCP Site on natural resources in and around the site. The NOAA and DOI thereafter, commenced a natural resource damage assessment (the "NRDA"). On March 22, 2012, IES entered into an agreement with the NOAA and the DOI to contribute resources to the investigations being conducted in support of the NRDA, but the Plaintiffs assert specifically that the agreement disavowed any liability on the part of IES in connection with the LCP Site noting that the agreement provided "This agreement shall not constitute, or be interpreted or used as an admission of fault, liability, law or fact by [IES] Appx. 10, ¶ 8." Plaintiffs claim on information and belief that NOAA and DOI have already expended more than $600,000 on investigations in support of the NRDA and will continue to expend substantial sums and on July 21, 2015 NOAA and DOI notified Plaintiffs that they intend to recover any unreimbursed portions of the investigative costs from Plaintiffs.

### D.  State Court Action

On September 30, 2015, Plaintiffs filed a Complaint in the Superior Court of New Jersey,

Law Division, Morris County ("State Court Action")[7] seeking a declaratory judgment that

Defendants G-I Holdings, Inc., Building Materials Corporation of America d/b/a GAF Materials

Corporation, GAF Corporation, John and Jane Does 1-20, and ABC Companies 1-20 are in

breach of the Indemnification Agreement and pursuant to the Indemnification Agreement must

indemnify Plaintiffs for any costs or liabilities incurred in connection with the investigation and

remediation of the LCP Site, that Plaintiffs do not bear any responsibility for same, that G-I is

the successor to the entity or entities that owned and operated the LCP Site between the early

1950s and 1972, and that Plaintiffs are not successors to any such entity.  Plaintiffs also seek

recovery of costs incurred, and that Plaintiffs may be ordered to incur, in connection with the

investigation and remediation of the LCP site (Appx. 3).

Count One of the Complaint seeks a declaratory judgment: "[d]eclaring that G-I or its

successor, if any, is the successor to GAF Corporation and GAF Chemicals Corporation, and is

responsible for all liabilities associated with those companies' ownership and operation of the

LCP Site; [d]eclaring that none of the Plaintiffs is a successor to GAF Corporation or GAF

Chemicals Corporation, and that none of the Plaintiffs is responsible for any liabilities associated

with those companies' ownership and operation of the LCP Site; and, [g]ranting Plaintiffs such

other and further relief as is just and proper, including its costs for this action."

Count Two of the Complaint sounding in breach of contract seeks a declaratory judgment

declaring among other things that Defendants are contractually obligated under the

Indemnification Agreement to indemnify ISP and IES for all Claims of Environmental Liability

related to the LCP Site, including payments of defense costs, environmental remediation costs

---

[7] *Ashland Inc., et al. v. G-I Holdings Inc., et al.*, Docket No. MRS-L-2331-15 (Law Div. September 30, 2015).

incurred by Plaintiffs in the past and the future and that Defendants are in breach of those obligations, and entering judgment in Plaintiffs' favor awarding damages in the amount expended by Plaintiffs in accordance with the proof to be presented, with the maximum lawfully allowable interest thereon.

Count Three of the Complaint alleges a breach of the implied covenant of good faith and fair dealing asserted by ISP and IES against all Defendants. Count Four of the Complaint alleges unjust enrichment asserted by Ashland and IES against all Defendants.

On November 4, 2015, Plaintiffs filed a Motion in the State Court Action to Proceed Summarily and for Entry of Judgment Against Defendants. Appx. 9. Plaintiffs argue that pursuant to Rule 4:67-1 *et seq.* of the New Jersey Rules of Court, which permits a court to dispose of a matter on the record or on minimal testimony in open court on short notice, the state court should resolve the dispute in a summary fashion. Plaintiffs assert that the issues are straightforward, and "limited to the interpretation and application of an uncomplicated contract and the details of a few corporate changes." Therefore, Plaintiffs requested that the state court resolve the action in a summary fashion.

### E.    Removed State Court Action

On November 4, 2015, before any substantive proceedings in the state court occurred, G-I filed a Notice of Removal, arguing that the Bankruptcy Court retained jurisdiction for proceedings such as Ashland's State Court Action under both the Confirmation Order and Confirmed Plan. Notice of Removal, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 1. G-I alleges that the State Court Action is a "core proceeding" under 28 U.S.C. § 157(b)(2) because "[t]he State Court Action is a proceeding 'arising in' G-I's Chapter

11 bankruptcy case…[and] is fundamentally a matter concerning events that occurred prior to the commencement of G-I's bankruptcy case that will implicate the administration of the Plan, will require the interpretation of various provisions of the Plan, and will entail an assessment and determination as to whether to allow or disallow such causes of action in light of the discharge of Claims provided for by the Confirmation Order and the Plan."  In the alternative, G-I asserts that that the State Court Action is at a minimum "related to" G-I's bankruptcy case, and that the Defendants consent to entry of final orders or judgment by the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure 9027(a)(1), if the Court deems the State Court Action a non-core proceeding.

On November 20, 2015, Ashland filed a Motion to Remand the proceeding to state court. Motion for Remand to Superior Court of New Jersey, Law Division, Morris County, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 9 ("Motion for Remand").  On December 18, 2015, G-I filed a Response in opposition to Ashland's Motion to Remand. Opposition to Ashland, Inc., Int'l Specialty Prod., Inc., & ISP Envtl. Servs., Inc.'s Motion for Remand, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 14 ("G-I's Opposition").  On January 22, 2016, Ashland filed a Reply in further support of its Motion to Remand.  Plaintiffs' Reply in Further Support of Motion for Remand, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 18 ("Ashland's Reply").

On December 11, 2015, G-I filed a Motion to Dismiss Ashland's Adversary Proceeding. Motion to Dismiss Adversary Proceeding, *supra*.  On February 2, 2016, Ashland filed a Response in Opposition to G-I's Motion to Dismiss.  Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 19.  On March 11, 2016, G-I filed a Reply in support of its Motion to

Dismiss. Reply Memorandum of Law in Further Support of Motion Dismiss Ashland, Inc., Int'l

Specialty Prod. Inc., & ISP Envtl. Servs., Inc's Complaint for Declaratory Judgment, *Ashland,*

*Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 25. On April 21, 2016, G-I filed a

Letter in further support of its Motion to Dismiss, which Ashland argues is an unauthorized sur-

reply. Apr. 21, 2016 Letter from A. Rossman, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No.

15-02379, ECF No. 31. On May 18, 2016, Ashland filed a letter response to the Motion to

Dismiss. Letter Response to Sur-Reply, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-

02379, ECF No. 32.

On May 26, 2016, the Court held a telephone conference call with the parties to discuss

the schedule for oral argument of the pending motions. The Court determined that the Motion

for Remand would be heard and decided before the Court and parties expend additional time and

resources in regard to the Motion to Dismiss. Therefore, the Court adjourned the Motion to

Dismiss and determined that the Motion to Remand and Supplemental Motions would be heard

together as scheduled. The Court acknowledged, however, that parties may necessarily need to

refer to the Motion to Dismiss to the extent such reference informs the arguments for or against

remand.

Also pending before the Court are: Plaintiffs' Motion for *In Camera* Inspection and

Determination That Certain Documents Are Not Privileged and Should Be Considered in

Deciding Defendants' Dismissal Motion [ECF. No. 33]; (2) the ISP Plaintiffs' Motion for

Authority to File Under Seal and Unredacted (I) Exhibits E and F to Plaintiffs' Response to

Defendants' Sur-Reply on the Dismissal Motion, and (II) Plaintiffs' Memorandum of Law in

Support of Motion for *In Camera* Inspection and Determination that Certain Documents are Not

Privileged and Should be Considered in Deciding Defendants' Dismissal Motion [ECF. No. 34];

(3) the G-I Defendants' Motion for Authority to File, Under Seal, Their Opposition to Plaintiffs'

Motion for *In Camera* Inspection and Determination That Certain Documents Are Not Privileged

and Should Be Considered in Deciding Defendants' Dismissal Motion and Response to

Plaintiffs' Motion for Authority to File Under Seal and the Exhibits Thereto [ECF. No. 46]; and

(4) the ISP Plaintiffs' Motion For Authority to File Under Seal and Unredacted (I) Plaintiffs'

Reply Memorandum of Law in Further Support of Motion for *In Camera* Inspection and

Determination That Certain Documents Are Not Privileged and Should Be Considered in

Deciding Defendants' Dismissal Motion, Generally in the Context of This Litigation and

Elsewhere; and (II) Exhibit A to Plaintiffs' Reply Memorandum of Law (the "August 3 Motion

to Seal") [ECF No. 51].

     The Court held a telephone conference call with the parties on June 1, 2016. During the

telephone conference call, the Court determined to adjourn the hearing on the Supplemental

Motions to a date after the Motion for Remand has been decided.

### F. Motion to Remand

Ashland's Motion to Remand:

     On November 20, 2015, Ashland filed a Motion to Remand the proceeding to the

Superior Court of New Jersey, Law Division, Morris County. Motion for Remand, *supra*.

Ashland claims that the Bankruptcy Court does not have subject matter jurisdiction over this

proceeding because, it argues that the Plaintiffs' claims does not "arise in" the G-I bankruptcy

cases, are not "related to" the post-confirmation G-I bankruptcy cases, and lack a "close nexus"

to the bankruptcy cases. *Id.* at 17. Ashland further argues that mandatory and discretionary

abstention principles preclude the Bankruptcy Court's exercise of jurisdiction, and therefore the proceeding must be remanded to the state court. *Id.* at 18.

First, Ashland argues that there is no basis for subject matter jurisdiction in the Bankruptcy Court. Ashland notes that bankruptcy courts have limited jurisdiction, and that the Court must begin with an assumption that it lacks subject matter jurisdiction. *Id.* The party asserting jurisdiction bears the burden of overcoming the assumption that subject matter jurisdiction does not exist. *Id.* (citing *Falise v. Am. Tobacco Co.*, 241 B.R. 48, 56 (E.D.N.Y. 1999)). Ashland claims that G-I cannot meet that burden because Plaintiffs' claims neither "arises in" the G-I bankruptcy cases nor are they "related to" the post-confirmation G-I bankruptcy cases. Ashland argues that in response to environmental liabilities improperly asserted against Plaintiffs, the Plaintiffs assert purely state law claims for indemnity based on a contractual agreement that was entered into years prior to the G-I cases, and which survived the bankruptcy as an obligation of New G-I. *Id.* at 19.

Ashland argues that its claims do not meet the standard for "arising in" jurisdiction, which requires that a matter "has no existence outside of the bankruptcy." *Id.* (citing *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006)). Ashland claims that its State Court Action concerns New G-I's post-confirmation breach of the Indemnification Agreement, not events pre-dating the G-I bankruptcy case, that determination of the claims does not implicate the administration of the Plan, as the Plan is fully consummated but for residual claims resolution issues. *Id.* Ashland also urges that the action does not require interpretation of the Plan, and that the proceeding does not require the Court to determine the allowability of Ashland's claims in light of G-I's bankruptcy discharge because the claims arose post-confirmation and do not qualify as "claims" under the Confirmed Plan. *Id.* at 19-20. Ashland further notes that while the Plan contains a broad

definition of "Environmental Claim," it specifically excludes from discharge any "Claim of an Affiliate." *See* Confirmed Plan, *supra,* §§ 1.1.67 (definition of "Environmental Claim"), 1.1.8 (definition of "Affiliate"). Ashland argues that ISP and IES were affiliates of the Debtor on the Effective Date of the Plan and therefore Ashland's indemnification claims are not subject to discharge.

Ashland also argues that the State Court Action is not "related to" the post-confirmation G-I bankruptcy case. *Id.* at 21. Ashland cites to *In re Resorts International, Inc.*, 372 F.3d 154 (3d Cir. 2004) to argue that subject matter jurisdiction over a post-confirmation dispute only exists if there is a "close nexus" between the cause of action and the bankruptcy plan or proceeding, and that, here, such a close nexus does not exist. Ashland argues that the Plan confirmed over six years ago (now seven years ago), is for all intents and purposes fully consummated, and that a determination of Plaintiffs' claims requires not interpretation of the Plan, but application of the terms of the assumed Indemnification Agreement, and will not affect administration of the Confirmed Plan or distribution to creditors or the debtors' ability to perform under the Plan. *Id.* at 21-22. Ashland further argues that "New G-I," as opposed to G-I as the debtor, assumed the Indemnification Agreement, that Plaintiffs are suing New G-I, not the debtor, and therefore the G-I bankruptcy estate has no involvement in the proceeding. *Id.* at 22-23. Thus, Ashland urges that the state court is the appropriate forum to decide the "garden-variety contract dispute and request for declaratory judgment on corporate, non-bankruptcy issues with no relation to the G-I cases." *Id.* at 23.

Ashland further argues that the retention of jurisdiction provisions in the Confirmed Plan and Confirmation Order cannot confer jurisdiction where none exists. *Id.* at 24 (citing *Geruschat v. Ernst Young LLP*, 505 F.3d 237, 256 (3d Cir. 2007); *Resorts Int'l*, 372 F.3d at 161). Ashland

claims that because the Bankruptcy Court lacks subject matter jurisdiction over the dispute for the reasons above, the Confirmation Order and Plan cannot create jurisdiction over the dispute. *Id.*

Second, Plaintiffs argue, in the alternative, even if the Court determines it has subject matter jurisdiction, the Court should abstain from exercising bankruptcy jurisdiction, pursuant to either mandatory or permissive abstention, 28 U.S.C. § 1334(c)(1) or (2), and that there exists an "equitable ground" justifying remand under 28 U.S.C. § 1452(b). *Id.* Ashland cites to the mandatory abstention elements described in *Stoe v. Flaherty*: "the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action 'is commenced' in a state forum of appropriate jurisdiction; and (5) the action can be 'timely adjudicated' in a state forum of appropriate jurisdiction." *Id.* at 24-25. Ashland argues that all five requirements are met because "(1) … Plaintiffs' Complaint asserts exclusively state law causes of action for breach of contract and related relief[;] … (2) … the claims do not 'arise under' or 'arise in' in the G-I bankruptcy cases[;] (3) [t]his Court also lacks 'related to' jurisdiction, and it is the only possible jurisdictional basis because the parties lack complete diversity[;] (4) [t]his action was commenced in the Superior Court of New Jersey, Morris County, where the Defendants are located[;] (5) … the Superior Court can timely adjudicate the Plaintiffs' claim" and in fact Plaintiffs filed a Motion to Proceed Summarily in the State Court Proceeding. *Id.* (citing *Stoe*, 436 F.3d at 213). Therefore, Ashland argues that mandatory abstention, pursuant to 28 U.S.C. § 1334(c)(2) requires this Court to remand the proceeding to the Superior Court of New Jersey. *Id.* at 25.

Even if the Court is not required to abstain under § 1334(c)(2), Ashland argues that the Court should exercise its permissive authority to abstain under § 1334(c)(1). Ashland notes that the equitable considerations relevant to determine the appropriateness of equitable remand and permissive abstention under Sections 1452(b) and 1334(c)(1) respectively are identical. The courts consider the statutory factors – interests of justice and comity – as well as a list of other factors in making the decision to permissively abstain and remand, including: "(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants." *Id.* at 25-26 (citing *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.)*, 194 B.R. 750, 760 (D.N.J. 1996)). Ashland argues that permissive abstention is appropriate because Plaintiffs are asserting exclusively state law claims which will not significantly impact the efficient administration of the bankruptcy estate where here, the G-I bankruptcy cases were confirmed over six years ago (now seven years ago), the instant dispute is not tangential to the residual claims resolution issues in those cases and the defendants, including New G-I, are not debtors and Plaintiffs have moved for a summary proceeding and an order of final judgment in the state court. *Id.* at 26. Therefore, Ashland requests that the Court abstain and remand the proceeding back to the Superior Court of New Jersey.


G-I's Response in Opposition:

On December 18, 2015, G-I filed a brief in opposition to Ashland's Motion to Remand. G-I's Opposition, *supra*. G-I argues that remand is inappropriate because resolution of the litigation will require the court to interpret and apply the Confirmed Plan, the Confirmation Order, and the Bankruptcy Code, and therefore Plaintiffs' Motion to Remand should be denied.

First, G-I argues that the claims alleged in the Complaint are inextricably intertwined with and exist within, G-I's bankruptcy case such that "arising in" jurisdiction is appropriate. G-I argues that resolving the matter vis-à-vis G-I and necessarily GAF, which merged with G-I prior to its bankruptcy filing such that G-I is its corporate successor, will require this Court to consider and apply its own Confirmation Order and the Plan. *Id.* at 5-6 (citing *Stoe*, 436 F.3d at 216; *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 387 (D. Del. 2011) (finding that the debtor's defenses "ultimately require[] the Court to interpret, validate, and enforce the Assumption Order" and therefore jurisdiction arises under the Bankruptcy Code as well as in the debtor's bankruptcy case)). G-I also argues that the basis for all but one of the ISP Plaintiffs' claims is the 1996 Indemnification Agreement, an executory contract that was assumed by G-I when the Plan was confirmed. *Id.* at 6 (citing Doc. No. 9-3, No. 9-4 ¶¶ 115-137). G-I further posits that in light of the Plan's discharge provisions, a determination of whether such claims must be disallowed not withstanding this assumption is an "administrative matter" that "arises in" G-I's bankruptcy case. *Id.*

G-I argues that despite Ashland's contention that the action does not concern events pre-dating the bankruptcy cases, the action actually concerns environmental contamination and documented releases of hazardous substances at the LCP Site that occurred "decades ago." *Id.* at 7. G-I asserts that the contamination underlying the Plaintiffs' claims was not latent or newly-discovered, but dates back to before G-I's bankruptcy filing, confirmed by the AOC issued by

the EPA in 1999 cited and attached to the Complaint. G-I argues that the CERCLA liability for which the EPA and NOAA continue to pursue IES is not new, but has been in existence for years and that IES expressly acknowledged its assumed CERCLA PRP status as to the LCP Site well before G-I filed its bankruptcy petition. *Id.*

Additionally, G-I disputes Ashland's statement that the Plan is "fully consummated but for some residual claims-resolution issues," and asserts that the G-I bankruptcy case and related adversary proceedings remain pending. *Id.* G-I argues that allowing Ashland to proceed in state court "would surely frustrate or impede the thus-far orderly administration of the Plan, as it would open the floodgates for other parties to assert that their Claims are similarly exempt from the discharge provided for in the Confirmation Order and Plan." *Id.*

G-I disputes Plaintiffs' assertions that this Court need not interpret the Plan or determine allowability of their claims as their claims are for a post-confirmation breach of the assumed 1996 Indemnification Agreement and arose post-confirmation. G-I asserts that the timing relevant to the effect of the discharge on their claims is not the purported breach of the 1996 Indemnification Agreement, which G-I disputes, but rather the timing of the environmental contamination underlying the claims and the failure of the Plaintiffs to assert claims at the time the Indemnification Agreement was assumed under the Plan.

G-I argues that the contamination took place prior to the effective date of the Plan and the assumption of the 1996 Indemnification Agreement, such that Plaintiffs cannot now pursue claims based on such conduct, and this Court must look to and enforce the discharge and injunction provisions provided for in the Confirmation Order and Plan. *Id.* at 8.

G-I also argues that Plaintiffs' causes of action are "Claims" under the Plan, and therefore resolution of the dispute will require interpretation of the Bankruptcy Code and

Confirmation Order and Plan. *Id.* at 8-9. G-I argues that while ISP and IES were under common beneficial ownership as G-I, "they should not be permitted to rely on their former Affiliate status to skirt the discharge and assert 'any other or further' Environmental Claims based on pre-confirmation contamination." *Id.* at 8. Finally, G-I notes that Plaintiffs themselves rely on provisions of the Confirmation Order and Plan to make their arguments as to why their claims are permitted, despite the bankruptcy discharge and why remand is appropriate, highlighting the need for interpretation of the Confirmation Order and Plan, and therefore demonstrating that jurisdiction is proper only in this Court. *Id.* at 9 (citing 11 U.S.C. § 101(5) (definition of "claim")).

Alternatively, G-I argues that this Court has "related to" jurisdiction over Plaintiffs' claims. G-I asserts that *Resorts International's* "close nexus test" is typically met "when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed [Chapter 11] plan." *Id.* at 10 (citing *Resorts Int'l*, 372 F.3d at 167). G-I also asserts that courts in this Circuit find "related to" bankruptcy jurisdiction when proceedings will require both interpretation and application of the terms of other orders issued by the bankruptcy court. *Id.* (citing *In re Shenango Grp. Inc.*, 501 F.3d 338, 344 (3d Cir. 2007); *Miller v. Chrysler Grp., LLC*, No. 12-CV-760, 2012 WL 6093836, at *3 (D.N.J. Dec. 7, 2012)). G-I argues that here G-I is the only defendant named in all counts of Plaintiffs' Complaint, and further that G-I is the only defendant against whom the Plaintiffs could attempt to assert a claim in the first instance, because BMCA is not a signatory to and has no obligation in connection with the 1996 Indemnification Agreement, and GAF no longer has its own separate corporate existence. G-I claims the close nexus test for "related to" jurisdiction in the post-confirmation context is satisfied as it requires both interpretation and application of the Bankruptcy Code, Confirmation

Order and Plan, and this Court should find, at a minimum, that it has "related to" jurisdiction. *Id.* at 11-12.

G-I also argues that pursuant to the Confirmation Order and Plan, there is no meaningful distinction between "New G-I" and the Debtor. G-I asserts that the Confirmation and Plan unquestionably states that its benefits flow to G-I after the Effective Date of the Plan and that both expressly state that the discharge and injunction provisions apply to the Reorganized Debtors, defined to include G-I "from and after the Effective Date." *Id.* at 11 (citing Case No. 01-30135, Doc. No. 9787 ¶¶ 76, 79 and Exh. A, Sections 1.1.103, 9.2, 9.3). G-I again argues that contamination of the LCP Site occurred long before the bankruptcy case, and therefore all of Plaintiffs' claims here fall squarely within the confines of the discharge approved by the Court, warranting, at a minimum, "related to" jurisdiction. *Id.* at 12 (citing Doc. No. 9787, ¶ 76, and Exhibit A, Section 9.2).

Finally, G-I argues that this Court need not and should not abstain from adjudicating this proceeding. *Id.* G-I argues that, because this Court has "arising in" jurisdiction, mandatory abstention does not apply. *Id.* (citing *Stoe*, 436 F.3d at 215). Even if the Court finds that it does not possess "arising in" jurisdiction but only "related-to" jurisdiction however, G-I claims that all five elements of mandatory abstention have not been shown. *Id.* at 12-13.

Specifically, G-I asserts that Plaintiffs have not shown that the proceeding can be "timely adjudicated" in state court. *Id.* at 13. G-I notes this Court's many years of institutional knowledge and familiarity with the parties, the G-I Defendants' corporate history, the key transactional documents, the bankruptcy proceeding over the years, the Confirmation Order and Plan, and record which serve great import to the G-I Defendants' defenses. *Id.* at 14. In addition, G-I asks that this Court note the "increasingly heavy backlog on the Track 4 docket in

Morris County, New Jersey, the longest civil track in State Court and to which this litigation was initially assigned, as well as the mandatory retirement in 2016 of the Honorable Stephan C. Hansbury, who was assigned to preside over this litigation prior to removal...[which] will surely necessitate transferring this matter to yet another judge who will need to get up to speed on the complex facts and issues relevant to this litigation that this Court is already well familiar with." *Id.* at 14-15. Therefore, G-I argues that because the state court cannot timely adjudicate the matter, mandatory abstention does not apply, and this Court is the proper forum to hear the matter. *Id.*

G-I also argues that this Court should not exercise its permissive authority to abstain pursuant to 28 U.S.C. § 1334(c)(1) where the Plaintiffs have identified no concrete interest of justice to be served by abstaining and that other factors weigh strongly against permissive abstention. *Id.* at 15. G-I relies on *In re Market Tower Assocs.*, 1989 WL 641964, at *7 (Bankr. D.N.J. April 21, 1989) (Gambardella, J.) ("[t]he primary determination for the exercise of discretionary abstention is whether there exist unsettled issues of state law"), and argues that because there are no unsettled issues of state law in this proceeding, permissive abstention is not warranted. *Id.* Additionally, G-I argues that principles of judicial economy given this Court's some 15 year history and familiarity with G-I's bankruptcy case supports declining Plaintiffs' request for permissive abstention. G-I's Opposition, *supra*, at 16-17 (citing *In re Semcrude L.P.*, 442 B.R. 258 (Bankr. D. Del. 2010)).

Therefore, G-I requests that this Court deny Plaintiffs' Motion to Remand.

Ashland's Reply:

25

On January 22, 2016, Ashland filed a Reply Brief in further Support of its Motion to Remand. Ashland's Reply, *supra*.

First, Ashland argues the Court should decide the instant motion and remand the action prior to considering the pending Motion to Dismiss. *Id.* at 3. Ashland asserts that "[b]oth logic and case law dictate that an actual determination must be made as to whether subject matter jurisdiction exists before a court may turn to any aspect of the merits of a case." *Id.* (citing *Tagayun v. Lever & Stolzenberg*, 239 Fed. Appx. 708, 710 (3d Cir. 2007); *Malaysia Int'l Shipping Corp. v. Sinochem Int'l Co.*, 436 F.3d 349, 358 (3d Cir. 2006); *Randolph v. Forsee*, No. 10-2445-JAR-JPO, 2010 U.S. Dist. LEXIS 107618, at *5-7 (D. Kan. Oct. 7, 2010)).[8]

Next, Ashland argues that this action did not "arise in" a bankruptcy case, and that the mere possibility that resolution of Plaintiffs' declaratory judgment and breach of contract claims may require a court to look at terms of the Confirmed Plan and Confirmation Order does not confer "arising in" subject matter jurisdiction, because "arising in" jurisdiction is only present if the proceeding "has no existence outside of the bankruptcy." *Id.* at 4 (citing *Stoe*, 436 F.3d at 216). Ashland argues that while the Defendants argue that Plaintiffs' claims were discharged as environmental claims because "they are based on known [environmental] contamination that occurred prior to the confirmation of the Plan and assumption of the 1996 Indemnification Agreement," (citing G-I's Opposition, *supra*, at 5-6), that assertion is incorrect. Ashland asserts that its claims are not based on environmental law concerning contamination that occurred prior to Plan confirmation, rather Ashland argues that its claims accrued only when Plaintiffs were ordered to expend money in connection with the LCP Site upon the EPA's issuance of the UAO and Plaintiffs' related demand for indemnification was rejected by Defendants in June 2015. *Id.*

---

[8] This Court agreed, and as a scheduling matter, has decided to hear and decide the Motion to Remand prior to hearing the Supplemental Motions and Motion to Dismiss. *See supra* at 13-14.

at 5 (citing Comp. ¶¶ 101-105, Exhs. K, L, M; *McDermott v. New York*, 406 N.E.2d 460, 461

(N.Y. 1980) ("Indemnification claims do not accrue until the party seeking indemnification has

made payment); *Village of Ilion v. County of Herkimer,* 23 N.Y.3d 812, 821 (N.Y. 2014)

("Subject to certain exceptions, a claim for breach of contract exists on the date of the breach")

(citing N.Y.C.P.L.R. § 213(2))).[9] The Plaintiffs argue that the matter before the Court is not on a

debtor's claim objection but is a post-confirmation lawsuit, against a reorganized debtor, for a

post-confirmation breach of an assumed executor contract. *Id.* at 5.

    Further, Ashland argues that this post-confirmation state law contract action was properly

brought in the Superior Court of New Jersey, and should be resolved there, even if Defendants

choose to assert the Plan's discharge provisions as a defense to liability. *Id.* at 6 (citing *Faltas-*

*Fouad v. St. Mary's Hosp.,* 2015 U.S. Dist. LEXIS 7209, at *12 (D.N.J. Jan. 20, 2015) ("The fact

the federal bankruptcy law is implicated as a defense to [Plaintiffs'] claim, does not change the

fact that [Plaintiffs'] claim itself does not "arise under" title 11)). Ashland further argues that "a

case may not be removed to federal court on the basis of a federal defense . . . even if the defense

is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the

only question truly at issue in the case. *Id.* (quoting *Rivet v. Regions Bank of Louisiana,* 522

U.S. 470, 475, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998)). Plaintiffs argue that under the "well-

pleaded complaint rule," "the plaintiff is the master of the complaint" and "a defendant cannot,

merely by injecting a federal question into an action that is plainly a state law claim, transform

the action into one arising under federal law, thereby selecting the forum where the claim shall

be litigated." *Id.* at 7 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99, 107 S. Ct. 2425,

96 L. Ed. 2d 318 (1987); *Faltas-Fouad*, 2015 U.S. Dist. LEXIS 7209, at *12). Additionally,

---

[9] Section 3.3 of the 1996 Indemnification Agreement contains a New York choice of law provision.

Ashland notes that there is no bankruptcy exception to the well-pleaded complaint rule. *Id.* at 7 (citing *Conseco, Inc. v. Adams (In re Conseco, Inc.)*, 318 B.R. 425, 429 (Bankr. N.D. Ill. 2004)).

Ashland argues that the Complaint does not assert a bankruptcy claim, and this Court's analysis must begin and end with the Complaint, "which clearly does not assert any federal claims, much less claims 'arising in' bankruptcy under the Third Circuit's *Stoe* standard." *Id.* Ashland urges that Plaintiffs' claims do not meet the definition of pre-petition "Environmental Claims" as defined under the Plan, but rather are post-petition contract claims that arose after the Effective Date of the Plan, so not subject to the Plan's discharge provisions. Ashland posits that Defendants' arguments concern defenses not relevant to the Court's determination of "arising in" jurisdiction and that post-confirmation state contract law governs the purported breach of an assumed contract under the reorganization plan, and such claims are properly before the state court. *Id.* (citing *In re Zurn*, 290 F.3d 861 (7th Cir. 2002); *In re Superior Air Parts, Inc.*, 516 B.R. 85, 98 (Bankr. N.D. Tex. 2014)).

Third, Ashland argues that the Court does not have "related to" jurisdiction. *Id.* at 8. Ashland again argues that pursuant to the well-pleaded complaint rule, because even if G-I's defenses may require consultation of the Confirmed Plan and Confirmation Order, "Plaintiffs claims will not affect the interpretation, implementation, consummation, execution or administration of the confirmed G-I plan, and therefore Plaintiffs' claims do not meet the 'close nexus' test for jurisdiction set forth in *Resorts International*." *Id.*

Ashland claims that G-I's opposition presents conclusory statements – such as that the Plan is not fully consummated or that allowing the proceeding in state court will open the floodgates for other parties to assert that their claims are similarly exempt from discharge – which Ashland argues are not supported by evidence, and therefore, are unpersuasive. *Id.* at 8-9.

Ashland notes, for example, that G-I does not identify any of these parties by name, and that

absent a unique relationship between G-I and these parties, as G-I has with Ashland due to the

Indemnification Agreement, there can be no such similar claims to "open the floodgates" for. *Id.*

at 8-9.

Ashland also repeats its argument that the "G-I Debtor" is not a party to the action, and

that "New G-I," a post-petition entity, must perform all the obligations under the assumed

executory contract. *Id.* at 9. Ashland argues that because G-I assumed the executory contract,

and that "it is well-settled that when a reorganized debtor elects to assume an executory contract,

it must perform its obligations under the contract going forward." *Id.* (citing *In re Fleming Cos.,*

499 F.3d 300, 308 (3d Cir. 2007)). Ashland argues that it is asserting claims that have arisen

over six years after confirmation, are based on a post-petition breach of contract, and should be

decided state court like any other breach of contract dispute. *Id.*

Finally, Ashland argues that abstention is appropriate under 28 U.S.C. § 1334(c) even if

the Court has jurisdiction. *Id.* at 9-10. Ashland disputes G-I's assertion that the state court will

not be able to "timely adjudicate" the action. *Id.* at 10. Ashland contends that the Superior

Court of New Jersey's Complex Business Litigation Program, to which this action was directed

while pending in state court, is the appropriate forum to hear this controversy, that the New

Jersey Rules of Court allow for expeditious resolution of claims, and that Plaintiffs have sought

to have the controversy decided summarily pursuant to N.J. Ct. R. 4:67, *et seq. Id.* at 10-11.

Ashland argues that the bankruptcy case is over fifteen years old and is now limited to residual

claims resolution issues, and therefore proceeding in state court would not impact the

Bankruptcy Court's administration. Therefore, Ashland claims that the state court can timely

adjudicate the controversy, and because it asserts the other requirements for mandatory

abstention are met, mandatory abstention is required. *Id.* Ashland argues that its claim is a commercial contract claim, and even if G-I asserts defenses based on the Confirmed Plan and Confirmation Order, this case is not more complex than other breach of contract cases routinely adjudicated in the state court. *Id.* at 10-11.

Ashland further argues that the Court should exercise permissive abstention "in the interest of justice" and that enough facts exist to warrant permissive abstention under the controlling standard. *Id.* at 11. Ashland claims the state court will enable a more timely resolution of the proceeding, which is a paramount concern for Plaintiffs, who Ashland claims are exposed to liability of as much as $37,500 per day in civil penalties for failure to comply with the 2015 UAO. *Id.* at 11. Ashland acknowledges that this Court is familiar with the facts and parties to this proceeding, but notes that the state court is also familiar with the specific contracts at issue, and the Court's familiarity with the facts and parties "does not mean that this Court must adjudicate every single dispute involving the reorganized New G-I until the end of time." *Id.* at 11-12.

Therefore, Ashland requests that the Court grant its Motion to Remand.


June 2, 2016 Oral Argument:

The parties appeared before this Court on June 2, 2016 to argue Ashland's Motion to Remand the proceeding to state court.

Ashland began by arguing that its State Court Complaint is comprised of four counts, none of which implicate federal law, and are all unrelated to bankruptcy claims, environmental claims, or the Confirmed Plan. Instead, Ashland asserts that the Complaint asserts state law declaratory judgment or contract based counts and is based on the 1996 Indemnification

30

Agreement, and is a post-confirmation breach of contract claim that arose in 2015 when Ashland made a demand upon the Defendants for indemnification under the Indemnification Agreement that was refused. Ashland differentiates between claims made in the State Court Complaint against what it refers to as "New G-I," the reorganized debtor, and G-I the debtor in the ongoing bankruptcy proceeding.

Ashland further notes that defendant BMCA was never in bankruptcy, and therefore the Court has no jurisdiction over BMCA as a non-debtor party.

Ashland argues that no claim for indemnification existed until after confirmation of the Plan. Ashland received a letter from the EPA, dated May 20, 2015, requiring ISP Environmental Services, one of the Plaintiffs, to remediate by performing the remedial design for the LCP Site in compliance with the 2014 UAO. According to the letter, the UAO became effective June 26, 2015. Shortly after receiving the letter from the EPA, Ashland wrote the Defendants, who responded, through counsel, by asserting that they have defenses to the claim for liability under the Indemnification Agreement and refused the request for indemnification.

Ashland also received a letter from the NOAA, dated July 21, 2015, informing Plaintiffs that the NOAA incurred expenses of $611,488.65 and were looking to various parties to settle with them or litigate the claim. That letter was sent to Defendants. All requests for indemnity were refused by Defendants.

Ashland argues that the 1991 Agreement does not cover the LCP Site because liability for the LCP Site passed, in the 1989 liquidation of GAF Corp. to Edgecliff Inc. which later became GAF Building Materials Corporation, not to Dorset Inc. which later merged with GAF Chemical Corp. Ashland states that it never dealt with Edgecliff Inc. and therefore could not have assumed liability for the LCP Site. Ashland notes, however, that a determination of liability is not

necessary at this stage because such a determination is for the merits of the case and subject matter jurisdiction must be established first.

Ashland asserts that liability for the LCP Site was assumed by Debtors in the 1996 Indemnification Agreement, which liability was expressly assumed by New G-I under the Confirmed Plan, citing ¶ 7.1 of the Plan. ("Any executory contracts or unexpired leases that are set forth on Schedule 7.1 of the Plan Supplement shall be deemed to have been assumed by the Debtors"). Ashland notes that the 1996 Indemnification Agreement was signed by James P. Rogers, Senior Vice President, on behalf of ISP and the GAF parties, and that ISP and GAF were all under the control of the Heymans.

Ashland urges here that Defendants have the burden to establish jurisdiction, and that all doubts must be resolved against federal jurisdiction. Ashland argues that this is a contract claim, not an environmental claim, and argues that even if this would otherwise be considered an environmental claim by the Confirmed Plan, the definition of an environmental claim under the Plan expressly does not include claims of affiliates. Because Ashland urges the Plaintiffs were affiliates of G-I at the time of the bankruptcy, they argue they do not have an environmental claim, citing Exhibit 1.193(c) of the Plan listing the ISP Plaintiffs as affiliates that are protected parties.

Ashland asserts that Plaintiffs IES and ISP were under the control of the Heymans and so they were "affiliates" up until and through the time of the bankruptcy proceedings and only in 2011 when Ashland acquired the companies were they no longer affiliates of GAF Group and affiliates under the common control of the Heymans. Ashland urges that the Plaintiffs are within the definition of "affiliates" entitled to indemnification from New G-I under the 1996 Indemnification Agreement and that Ashland is a "future representative" of an affiliate under the

Indemnification Agreement. Ashland argues that all of these Plaintiffs are future "representatives" of affiliates or "Post-Spin Subsidiaries" with standing to invoke the indemnification agreement against Defendants.[10]

Ashland further argues that "Environmental Matters" for which indemnification is sought is a broadly defined term used in the 1996 Indemnification Agreement.[11]

Further, Ashland claims that the outcome of this action will have no consequences on the estate, it will not affect the administration of the Plan or pending unrelated claims, and instead will only affect the Defendants who are not before this Court.

Ashland argues that there is no basis for bankruptcy jurisdiction, and therefore the case must be remanded to state court. First, Ashland argues that "arising in" jurisdiction is only present when a case has no existence outside of bankruptcy, and the state law contract claims, such as this, exist outside of bankruptcy; therefore, Ashland asserts that "arising in" jurisdiction does not apply.

Additionally, Ashland argues that the bankruptcy court lacks jurisdiction over post-confirmation business disputes, such as this, when the court is simply being asked to interpret and enforce a plan. Ashland reiterated that only "New G-I" breached the contract post-

---

[10] Section 2.2 of the 1996 Indemnification Agreement provides:

Indemnification and Release (a)(i) GAF and G-I Holdings shall jointly and severally indemnify, defend and hold harmless ISP Holdings, its Post Spin subsidiaries and each of their respective present and future Representatives and Affiliates from and against all GAF Liabilities and any and all Indemnifiable Losses of ISP Holdings, its Post Spin Subsidiaries and each of their respective Representatives and Affiliates arising out of or due to, directly or indirectly, the GAF Liabilities, whether such GAF Liabilities arose before, or arise after the Pin Off Date.
(ii) GAF, G-I Holdings, G Industries and GCC shall jointly and severally indemnify, defend and hold harmless ISP Holdings, its Post Spin Subsidiaries and each of their respective Representatives and Affiliates from and against all Spin Off Tax Liabilities and any and all Indemnifiable Losses of ISP Holdings, its Post Spin Subsidiaries and each of their respective Representatives.

[11] The 1996 Indemnification Agreement provides in part:

Environmental Matter: matters or circumstances related to, directly or indirectly, any actual or potential Claim of Environmental Liability . . .
Claim of Environmental Liability . . . any ... matter for which any member of the GAF Group is liable or responsible . . ..

confirmation, not G-I as a debtor. Ashland further urges that interpretation of the Plan is not required as it is conceded that the subject contract was assumed by the Debtor under the Plan and so the dispute does not require the Court to deal with allowability of claims or the discharge provisions of the Confirmed Plan. Because only New G-I is involved, Ashland noted that Bankruptcy Court jurisdiction does not extend to disputes between non-debtors unless there is a "logical possibility" that the estate will be affected. Here, Ashland claims there is no possibility the Debtors will be affected.

Ashland argues that the factors set out in *Miller v. Chrysler Group, LLC*, 2012 WL 6093836, which cites to *Resorts International*, also weigh in favor of remand: there is no need to interpret the Plan – it is clear that the contract was assumed; adjudication of the matter does not involve implementation of the Plan because the Plan is virtually concluded; the Plan has been fully consummated with only a couple of residual claims matters remaining; the Plan has been fully executed; and adjudication will not involve administration of the Plan because the state court action does not affect estate assets.

Ashland argues that the action here does not "arise in" and is not "related to" the bankruptcy case. To have related to jurisdiction, Ashland urges the Court must determine whether the outcome of the state court proceeding could "significantly affect" consummation of the plan, and here there would be *no* effect at all on consummation of the plan. Additionally, at this post-confirmation stage, Bankruptcy Court jurisdiction only extends to actions that affect an integral aspect of the bankruptcy process. Ashland argues that is not the case here, where resolution of the action will not require the court to interpret the Plan because whether Defendants breached the Indemnification Agreement will not require reference to the Plan or other documents pertaining to it.

Ashland argues that mandatory abstention is appropriate because all the elements are met: the action is based on state law claims; the claims do not "arise under or arise in" the bankruptcy case; federal courts would have no jurisdiction over the matter but for the bankruptcy proceeding; the action was commenced in state court; and the action can be timely adjudicated in state court. Ashland argues that there will be no delay in the state court because Ashland has moved for the proceeding to be heard as a summary proceeding. Additionally, the matter was assigned to a special business judge in Morris County, which Ashland claims will further expedite the proceeding. If mandatory abstention does not apply, Ashland asks that the Court alternatively, permissively abstain.

G-I began its presentation by noting this Court's fifteen years of experience with the Defendants and their bankruptcy case, and suggesting that the Court is uniquely situated to adjudicate this matter. Therefore, G-I urges that the Court should not send this action, with its complex corporate history and complex question of interpretation of the bankruptcy discharge, to state court which it asserts does not deal with the Bankruptcy Code, nor has experience with Defendants' history or this Court's rulings related to these companies. G-I argues that the touchstone of this case is whether Ashland had a pre-petition claim as defined in the reorganization plan, and thus whether that liability was discharged in bankruptcy.

G-I first urged the Court that such a discharge is the central purpose of the Bankruptcy Code, citing to *Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 35 S. Ct. 289, 59 L. Ed. 713 (1915). G-I also cited *In re AMR Corp.*, 2016 WL 1559294 (Bankr. S.D.N.Y. Apr. 14, 2016), where the Southern District of New York held that the bankruptcy court has jurisdiction post-confirmation to interpret and enforce its own orders. Additionally, because there is a basis for jurisdiction, at a minimum "related to" jurisdiction, the retention of

jurisdiction clauses in the Confirmed Plan and Confirmation Order are valid and enforceable. G-I argues that such retention of jurisdiction resolves the question of remand in its favor.

G-I argues that the definition of a claim in the Bankruptcy Code and Confirmed Plan is very broad, and a determination regarding whether Plaintiffs had a basis to bring a claim in G-I's bankruptcy case is at the heart of the dispute. G-I argues that while Plaintiffs assert that the claim is an indemnification claim that arose for the first time in 2015, G-I disagrees, asserting that in 1999 the Plaintiffs had clear notice from the EPA that IES was being deemed a potentially responsible party under CERCLA for the Linden Site, arguing Plaintiffs were cognizant of the liability during the bankruptcy proceeding, and that the change in 2015 was a "difference in amount, not a difference in kind." G-I argues that because the question of whether Plaintiffs had a claim in bankruptcy must be resolved, the Bankruptcy Court has jurisdiction over the matter. G-I also took issue with Ashland's view of the corporate history of these transactions. G-I asserts that the 1989 corporate reorganization placed the GAF liabilities in Dorset, Inc. not Edgecliff, Inc.

G-I also disputes Ashland's characterization of Defendants. First, G-I argues that there is no "New G-I," as Ashland refers to the Reorganized Debtor, and that the discharge applies to the Reorganized Debtor because it is the same company as the Debtor. Next, G-I claims that defendant GAF no longer exists because it merged into G-I. Finally, G-I claims that because defendant BMCA was not a party to the Indemnification Agreement, and it is not a corporate successor of GAF or G-I, BMCA has no liability under the 1996 Indemnification Agreement, and should not be in the lawsuit at all.

G-I asserts that this dispute falls under the broad retention of jurisdiction provision in the Confirmation Order, Paragraph 97 ["The Bankruptcy court shall retain jurisdiction and retain all

exclusive jurisdiction it has over any matter arising under the Bankruptcy Code, arising in or

related to the Chapter 11 cases or the Plan, or that relates to matters listed in Section 11.1 of the

Plan. [(referring to the "Retention of Jurisdiction" Provision of the Plan)].  G-I notes that

Ashland purchased ISP in 2011 as a stock purchase, and in doing so acquired all of its assets and

liabilities and did due diligence on all of its environmental liabilities including the LCP Site.  G-I

also argues that the State Court Action could have been filed in the Bankruptcy Court, and

Plaintiffs could have waived application of the doctrine of abstention.  G-I urges that Ashland

filed this matter in state court believing it has a better chance of success in state court, rather than

in Bankruptcy Court.

G-I argues that Plaintiffs are fundamentally packaging the case based on an erroneous

statement of the law – urging that the well-pleaded complaint rule applies only in "arising under"

jurisdiction, and does not apply when determining "arising in" or "related to" jurisdiction, where

the Court can and must consider the whole dispute, citing to *Am. Nat'l Red Cross v. S.G*, 505

U.S. 247, 112 S. Ct. 2465, 120 L. Ed. 2d 201 (1992) and *Principal Life Insurance Co. & Petula

Assocs. V. JP Morgan Chase Bank (In re Brook Mays Music Co.)*, 363 B.R. 801, 815 (Bankr.

N.D. Tex. 2007).

G-I argues that because the dispute concerns provisions of the Confirmed Plan and the

bankruptcy discharge including interpretation and enforcement of the Plan discharge and a

contract assumed under the Plan, this Court has "arising in" jurisdiction.  G-I notes that several

provisions of the Plan, the definitions of "environmental claim" under Section 1.1.67 of the Plan

and "affiliates" under Section 1.1.8 of the Plan and the executory contract provisions under

Section 7.1 and 7.3 of the Plan as well as the breadth of Section 101(5) of the Code which

defines "claims" in general, are already implicated in the dispute and as such this Court has

"arising in" jurisdiction. G-I notes that Ashland argues that claims for indemnity under the 1996

Indemnification Agreement except for funds actually paid were assumed by "New G-I," and

survived the Plan discharge provisions unaffected, while G-I argues that Ashland's claims are

barred by the Plan discharge. G-I argues that the definition of a claim is at the heart of the

dispute and that such a determination requires an interpretation of the Plan and Confirmation

Order, and therefore the Bankruptcy Court is properly situated to make that determination. G-I

argues here that the liabilities at issue here are "claims" under Section 101(5) of the Code. G-I

disagrees with Ashland's argument that Section 1.1.67 of the Plan (excluding Affiliates from the

definition of "Environmental Claim") precludes Ashland's claims from being discharged under

the Plan. G-I also argues that the executory contract provisions contained in Sections 7.1 and 7.3

of the Plan do not carve the ISP Plaintiffs out of the broad discharge provisions of the Plan. G-I

further argues that if the Court finds the matter is "core" under 28 U.S.C. § 157(b) the Court has

"arising in" jurisdiction, and abstention does not apply.

G-I next argues that even if the Court does not find "arising in" jurisdiction, this Court

has "related to" jurisdiction over the matter. G-I notes, citing to *Resorts International*, that the

Bankruptcy Court can have jurisdiction over a case post-confirmation if the matter has a "close

nexus" to the bankruptcy case. G-I further notes that courts, including the *AMR Corp.* court, take

it as obvious that the Court has jurisdiction to enforce its own orders. G-I argues that while the

Court can, even if it has jurisdiction, decline to exercise that jurisdiction as a matter of discretion,

because there is no way to avoid interpreting the Plan and discharge provisions, this Court can

and should exercise "related to" jurisdiction over this dispute.

Finally, G-I argues that while the Court can, even if it has jurisdiction, decline to exercise

that jurisdiction as a matter of discretion, the Court should not abstain from exercising

jurisdiction here. G-I notes that this case is a complex bankruptcy proceeding, involves a lengthy Confirmed Plan, and Confirmation Order, as well as a long history before this Court, and as such, this Court is best suited to adjudicate the matter. G-I notes that this Court has a right to hear matters concerning the enforcement of its own orders, which G-I notes contained retention of jurisdiction provisions, citing to *Resorts International*, and therefore should not exercise its discretion to abstain from hearing this matter.

G-I argues mandatory abstention is not warranted because this matter cannot be timely adjudicated in state court, which is an element of the test for mandatory abstention. G-I notes, citing to *In re Carriage House Condominiums L.P.*, 415 B.R. 133, 134 (Bankr. E.D. Pa. 2009), that the timeliness factor is not strictly a temporal issue, and the Court may consider other factors regarding whether the matter should be heard in state court. G-I presents what it characterizes as a very long backlog in the state court's calendar, and the long history and complexity of this bankruptcy case, and argues that remanding the matter to state court would prolong administration of the bankruptcy estate. G-I further argues that although the matter would be in a specialized state court, the state court judge assigned to the case as of the date of the hearing was scheduled to retire in the fall 2016 by virtue of the mandatory retirement statute, and so the parties would likely be assigned to a new judge at that time. G-I notes that there have been no proceedings in the state court relating to this matter, no companion case in the state court or extensive discovery already undertaken in that Court. Although Ashland has filed a Motion for Summary Proceeding in the state court, G-I asserts that this matter is too complex to proceed in a summary fashion.

G-I argues that it is this Court's duty to see that its orders are carried out, and that this Court is best suited to hear this case. Therefore, G-I urges that the Court should not abstain from hearing the dispute.

Next, Ashland argues, pursuant *Geruschat*, 331 B.R. 208, that the retention of jurisdiction provisions in the Plan and Confirmation Order cannot create jurisdiction where none exists. Therefore, Ashland argues that the provisions cannot trump the lack of subject matter jurisdiction.

Ashland notes that it is appropriate for a state court to consider a bankruptcy discharge as a defense, and it is in fact enumerated as an affirmative defense in the state court rules, citing to New Jersey Court Rule 4:5-4. Ashland agrees the court must untangle who has the environmental liability, but claim that the bankruptcy discharge is an affirmative defense, and even still that G-I has not proven the defense.

Ashland again differentiates "New G-I" from the Debtor, and argues that the impact of the state court action will be on "New G-I," and will therefore not have an effect on the estate.

Ashland argues, pursuant to *In re Conseco Inc.*, 318 B.R. 425, that the well-pleaded complaint rule applies in bankruptcy just as it does outside of bankruptcy, and, under the well-pleaded complaint rule, this Court does not have jurisdiction to hear this matter. Ashland further argues that whether this matter is a core proceeding does not need to be resolved for the purposes of determining subject matter jurisdiction, citing to *Resorts International*, 372 F.3d 154, and *In re Marcus Hook Dev. Park, Inc*, 943 F.2d 261 (3d Cir. 1991).

Ashland claims that it neither was required to file a proof of claim, nor was it able to. First, Ashland argues that it was not involved with IES or ISP until 2011, and therefore could not file a claim in 2009 when the plan confirmation order was entered, before it had interest in the

companies. Second, Ashland claims that it was not required to file a proof of claim and the Debtor has not proven that there was any claim available to these Plaintiffs during the reorganization proceeding.

Finally, Ashland notes the timeliness factor of mandatory abstention does not consider absolute speed of adjudication, but must be viewed in reference to the needs of the reorganization, citing to *Stoe*. Ashland argues that this consideration does not come into play here.

In response, G-I notes that even if the case is remanded to state court, it can and would file a motion or an adversary complaint in the bankruptcy case requesting that the Bankruptcy Court invoke the plan discharge and confirmation injunction to prevent Ashland from proceeding with the State Court Action. G-I argues that the ability to bring such a motion or complaint in the pending bankruptcy case makes it clear that there is a question regarding the bankruptcy discharge injunction and application of bankruptcy court orders, which demonstrates that this Court has jurisdiction over the matter. G-I further notes that Ashland has not cited any cases where remand was granted to allow the state court to apply a plan and discharge injunction, and that here, where the key issue in the dispute is the interpretation of the Confirmed Plan, arising in and related to jurisdiction is vested in this Court, citing *SemCrude*, 442 B.R. 258.

G-I next argues that case law is clear that the well-pleaded complaint rule is only applicable to determine "arising under" jurisdiction, and therefore is inapplicable to an analysis of arising in or related to jurisdiction, citing to *Giese v. Community Trust Bank (In re HRNC Dissolution Co.)*, 2015 WL 5299468 (Bankr. E.D. Ky Sept. 9, 2015) and *McIntyre Land Co. Inc. v. McIntyre Building Co. Inc. (In re McIntyre Building Co.)*, 2011 WL 1434691 (Bankr. M.D. Ala. Apr. 14, 2011).

G-I asserts that to take Ashland's argument that there is no effect on the estate post-confirmation to its logical conclusion would prevent any post-confirmation jurisdiction in the Bankruptcy Court. G-I claims that the bankruptcy estate will be impacted by the State Court Action, because the reorganized debtor will not get the benefit of discharge and a fresh start. Instead, G-I urges this Court to enforce its own Confirmation Order and the Plan.

G-I notes that there were many claims filed in this bankruptcy case, including environmental claims, that were unmatured, contingent, or partially matured claims, and that in 1999 Plaintiffs ISP and IES were identified by the EPA as potentially liable parties with respect to the LCP Site and so had knowledge of these claims during the bankruptcy proceeding.

In reply, Ashland again argued that the impact on the action is on the "New G-I," rather than the bankruptcy estate. Ashland further argued that the dispute is over a contract, the Indemnification Agreement assumed by New G-I, and not over other Plan provisions and that the discharge is a defense to Plaintiffs' claim. Finally, Ashland asserted that the indemnification is for money expended, not for what might be expended in the future. Because money has not been expended previously, Plaintiffs assert no claim could be filed.

Finally, G-I noted that ISP was represented by counsel with respect to the indemnification issues.

LEGAL STANDARDS

A. **Bankruptcy Court's Jurisdiction**

Removal of claims related to bankruptcy cases is governed by 28 U.S.C. § 1452. Section 1452(a) provides that: "[a] party may remove any claim or cause of action in a civil action ....to the district court for the district for which such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1452(b)

provides: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision not to remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title." 28 U.S.C. § 1452(b). "The equitable considerations relevant to the appropriateness of equitable remand and discretionary abstention under sections 1452(b) and 1334(c)(1), respectively, are essentially identical, and, therefore, a court's analysis is essentially the same for both types of relief." *Balcor/Morristown Ltd. P'Ship v. Vector Whippany Assocs.*, 181 B.R. 781, 788 (D.N.J. 1995); *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. 111, 126 (Bankr. D.N.J. 2003) (Steckroth, J.).

Pursuant to §§ 1334 and 157, bankruptcy jurisdiction extends to four types of title 11 matters pending referral from the District Court[12]: (1) cases "under" title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. *See Stoe*, 436 F.3d at 216.

The *Stoe* court further clarified:

> The category of cases "under" title 11 "refers merely to the bankruptcy petition itself." A case "arises under" title 11 "if it invokes a substantive right provided by title 11." Bankruptcy "arising under" jurisdiction is analogous to 28 U.S.C. § 1331, which provides for original jurisdiction in district courts "of all civil actions arising under the Constitution, laws, or treaties of the United States." The category of proceedings "arising in" bankruptcy cases "includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens." Proceedings "arise in" a bankruptcy case, "if they have no existence outside of the bankruptcy." Finally, a proceeding is "related to" a bankruptcy case "if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."

---

[12] Pursuant to the District Court's Standing Order of Reference, dated September 18, 2012, "[a]ny or all cases under Title 11 of the United States Code and any or all proceedings arising under Title 11 of the United States Code, or arising in or related to a cause under Title 11 of the United States Code shall be referred to the bankruptcy judges for the district."

*Id.* (internal citations and footnote omitted).

Further, the *Resorts International* court stated:

Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings; whereas proceedings "related to" a case under title 11 are referred to as "non-core" proceedings. Congress vested the bankruptcy courts with full adjudicative power with regard to "core" proceedings, subject to appellate review by the district courts. 28 U.S.C. §§ 157(b)(1), 158(a), (c). At the same time, it provided that, for 'non-core' proceedings that are otherwise related to a case under title 11, the bankruptcy court 'shall submit proposed findings of fact and conclusions of law to the district courts' subject to de novo review by that court." 28 U.S.C. § 157(c)(1).

*Resorts Int'l*, 372 F.3d at 162 (internal citation omitted).

Accordingly, bankruptcy judges maintain the power to adjudicate all core proceedings pursuant to 28 U.S.C. § 157(b)(1). *See* 28 U.S.C. § 157(b)(2) (enumerating a list of core proceedings). The Third Circuit has concluded that a proceeding is core under § 157(b)(1) "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d at 267 (citing *Beard v. Braunstein*, 914 F.2d 434, 444 (3d. Cir. 1990)).

Alternatively, "proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings." *Resorts Int'l*, 372 F.3d at 162. Bankruptcy judges may hear non-core proceedings which are related to a case under title 11 pursuant to 28 U.S.C. § 157(c)(1). The test for "related to" jurisdiction in the Third Circuit is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 116 S. Ct. 494, 133 L. Ed. 2d 461 (1995). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and

44

administration of the bankrupt estate." *Id.* In *Resorts International*, the Third Circuit found that

although bankruptcy courts have jurisdiction to hear a matter when its outcome "could

conceivably have any effect on the estate being administered in bankruptcy," the bankruptcy

court's jurisdiction "does not extend indefinitely, particularly after the confirmation of a plan and

the closing of a case." 372 F.3d at 165 (citing *Donaldson v. Bernstein*, 104 F.3d 547, 553 (3d.

Cir. 1997)). The Third Circuit noted in *Stoe* and *Resorts International* that "[f]or 'related to'

jurisdiction to exist at the post-confirmation stage, 'the claim must affect an integral aspect of the

bankruptcy process – there must be a close nexus to the bankruptcy plan or proceeding.'" *Stoe*,

436 F.3d at 216 n.3; *Resorts Int'l*, 372 F.3d at 167. The Third Circuit noted that "[m]atters that

affect the interpretation, implementation, consummation, execution, or administration of the

confirmed plan will typically have the requisite close nexus." *Resorts Int'l*, 372 F.3d at 167.

However, "the critical component of the *Pacor* test is that 'bankruptcy courts have no

jurisdiction over proceedings that have no effect on the estate of the debtor.'" *Resorts Int'l*, 372

F.3d at 164 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6, 115 S. Ct. 1493, 131 L.

Ed. 2d 403 (1995)).

In *Resorts International*, the debtor's reorganization plan resulted in the creation of a

Litigation Trust. 372 F.3d at 158-59. The Trust was assigned claims originally held by the debtor

against Donald J. Trump and affiliated entities, arising from Trump's 1988 leveraged-buy-out of

the Taj Mahal Resort. *Id.* Following a post-confirmation settlement between the Trust and the

Trump defendants, the Trustee brought a malpractice action against the defendant accountant

firm that was retained to provide auditing and tax-related services to the Trust. *Id.* The

accounting firm challenged the bankruptcy court's jurisdiction. *Id.* at 159. On the issue of

"related to" jurisdiction, the Third Circuit found that the malpractice action "lacks a close nexus

to the bankruptcy plan or proceeding and affects only matters collateral to the bankruptcy

process." *Id.* at 169. The court noted that the resolution of the malpractice claims would only

have an "incidental effect on the reorganized debtor," but would not affect the estate or interfere

with the implementation of the reorganization plan. *Id.*

By contrast, in *In re Shenango Grp. Inc.*, the issue was whether the reorganized debtor

was obligated under the confirmed chapter 11 plan to fully fund its pension plan to cover an

increase in benefits to certain beneficiaries. 501 F.3d at 341. Certain beneficiaries objected to

the reorganized debtor's approval of a pension plan, which was not fully funded, on the basis that

the confirmation plan imposed such an obligation. *Id.* at 342. The plaintiffs filed motions to

reopen the bankruptcy case and to compel the reorganized debtor to comply with the

confirmation plan's provisions. *Id.* The bankruptcy court noted that "the parties relied upon the

text of the Reorganization Plan to support their respective positions in the funding dispute." *Id.*

Looking to the history of the negotiations relating to the debtor's reorganization and the

provisions in the plan itself, the bankruptcy court determined that the reorganized debtor was

required to fund the pension plan at least up to the value of the benefits. *Id.* at 343.    The

bankruptcy court reached this determination, in part, to protect the beneficiaries from dilution of

their interests under the plan. *Id.* at 343. The district court adopted the bankruptcy court's

opinion and recommendation and an appeal followed. *Id.* On appeal, the reorganized debtor

argued that the bankruptcy court lacked "related to" jurisdiction to decide the dispute post-

confirmation. *Id.* Distinguishing *Resorts International*, the Third Circuit reasoned that "the

dispute did have a 'close nexus' to the bankruptcy under Resorts [International] as its resolution

required the court to interpret the plan's provision relating to the obligation of the debtor, who

was a party to the suit, to fund pension benefit increases." *In re Seven Fields Dev. Corp.*, 505

F.3d 237, 260 n.21 (3d. Cir. 2007) (discussing the Third Circuit's holding in *In re Shenango Grp.*).

Similarly, in *In re Sportsman's Warehouse, Inc.*, the Bankruptcy Court for the District of Delaware held that litigation regarding an assumption of a lease agreement in a Chapter 11 confirmation order conferred "related to" jurisdiction on the bankruptcy court because "[r]esolution of the various defenses that [Debtor] asserts...ultimately requires the court to interpret, validate, and enforce the Assumption Order...[and] [w]ell settled law supports this court's jurisdiction to interpret its own orders." 457 B.R. at 387.

To determine whether this Court has jurisdiction over the matter, it must also consider the well-pleaded complaint rule. The Supreme Court has long upheld the well-pleaded complaint rule, "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. A defense is not part of a plaintiff's properly pleaded statement of his or her claim." *Rivet*, 522 U.S. at 475, 118 S. Ct. at 925 (citations omitted). However, "[i]f a court concludes that a plaintiff has 'artfully pleaded' claims [omitting necessary federal questions], it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Id.*

Bankruptcy courts are also bound by the well-pleaded complaint rule; matters are not removable to the bankruptcy court "if the complaint does not affirmatively allege a federal claim." *McManus v. Orleans RH PA-IL*, 2015 WL 1475334, at *2 (E.D. Pa. Mar. 30, 2015). Therefore, if the Bankruptcy Code is only implicated as part of a defense to the complaint, the complaint is not removable to the bankruptcy court. *See id.*

Several courts have held, however, that in bankruptcy court, the well-pleaded complaint rule applies *only* when determining "arising under" jurisdiction under Title 11, and therefore is

not considered when analyzing whether jurisdiction exists under "arising in" or "related to"

subject matter jurisdiction. *See Giese v. Community Trust Bank*, 2015 WL 5299468, at *7;

*McIntyre Bldg. Co.*, 2011 WL 1434691, at *11-12. Instead, when determining if it has subject

matter jurisdiction, the court should focus on whether the outcome of the proceeding could

conceivably have an effect on the bankruptcy estate. *In re McIntyre Bldg. Co.*, 2011 WL

1434691, at *12.

> When deciding whether a bankruptcy court has jurisdiction to hear a proceeding,
> pursuant to 28 U.S.C. § 1334, one should look at the underlying bankruptcy
> proceeding and determine whether the given civil action will conceivably have an
> effect on it. This simply cannot be done if one limits [] ones' knowledge to the
> four corners of a complaint.

*Id.* at *13.

### B. Abstention and Remand

<u>Mandatory Abstention:</u>

The doctrine of mandatory abstention derives from 28 U.S.C. § 1334(c)(2), which

provides that:

> Upon timely motion of a party in a proceeding based on a State law claim or State
> law cause of action, related to a case under title 11 but not arising under title 11 or
> arising in a case under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent jurisdiction under this
> section, the district court shall abstain from hearing such proceeding if an action is
> commenced, and can be timely adjudicated, in a State forum of appropriate
> jurisdiction.

28 U.S.C. § 1334(c)(2).

The Third Circuit has stated that the legislative history of this provision

> tends to confirm…that, out of deference to state courts and concern over
> the constitutional validity of the broad statutory reach of bankruptcy
> jurisdiction, Congress sought to give effect to the preferences of litigants
> who prefer a state forum, when state court adjudication would not unduly
> interfere with the administration of the bankruptcy estate.

*Stoe*, 436 F.3d at 214 n.1.

Therefore courts must abstain from hearing a claim in "non-core" proceedings if: (1) a timely motion is made; (2) the proceeding is based upon a state law claim or state law cause of action; (3) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 or "arise in" a case under title 11; (4) federal courts would not have jurisdiction absent its relation to a bankruptcy case; (5) an action is "commenced" in a state forum of appropriate jurisdiction; and (6) the action can be timely adjudicated in the state forum. *In re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008); *Stoe*, 436 F.3d at 213; *see also In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. at 121; *In re Marcus Hook Dev. Park, Inc.*, 153 B.R. 693, 701 (Bankr. W.D. Pa. 1993) (both applying a similar test based on pre-*Stoe* case law from federal district courts and bankruptcy courts).

When assessing "timely adjudication" in this context, "[t]he question is not whether the action would be *more quickly* adjudicated in the bankruptcy court than in state court, but rather, whether the action can be *timely adjudicated* in the state court." *Exide Techs.*, 544 F.3d at 218 n. 14 (emphasis in original) (internal citations omitted) ("Here, the state court action was moving along expeditiously; the judge had made clear his intent to move the case forward; and the action had been placed in the docket of the Cook County Circuit Court, designed to facilitate the adjudication of commercial disputes. Accordingly, we believe that this action can be timely adjudicated in the state court."); *see also In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. at 125 ("Importantly, notions of comity and judicial economy warrant a conclusion that the state court is the proper forum for adjudicating this dispute. There is no legitimate reason to believe that the necessary time frame will be short-circuited by having the federal court adjudicate this matter. To the contrary, logic dictates that it may take more time to bring this case to trial in federal

court because the Court would need time to familiarize itself with the voluminous record and

pending motions presently before the state court."); *In re Marcus Hook Dev. Park, Inc.*, 153 B.R.

at 702 (rejecting mandatory abstention because the state-law cause of action was "in the

preliminary stage," no trial date had been set, and "resolution most likely will take several

years," whereas the parallel adversary proceeding in bankruptcy court was "scheduled for trial in

approximately three (3) months" and "[a] decision on the merits will be rendered by this court

shortly thereafter.").

Permissive Abstention and Equitable Remand:

> The doctrine of permissive abstention, under 28 U.S.C. § 1334(c)(1) provides as follows:

> [e]xcept with respect to a case under chapter 15 of title 11, nothing in this section
> prevents a district court in the interest of justice, or in the interest of comity with
> State courts or respect for State law, from abstaining from hearing a particular
> proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Under this "permissive abstention" doctrine, bankruptcy courts "have

broad discretion to abstain from hearing state law claims whenever appropriate in the interest of

justice, or in the interest of comity with State courts or respect for State law." *In re Gober*, 100

F.3d 1195, 1206 (5th Cir. 1996). The decision to exercise permissive abstention is committed to

the sound discretion of the court. *See id.* at 1207.

> The equitable considerations relevant to determine the appropriateness of equitable

remand and permissive abstention under Sections 1452(b) and 1334(c)(1), are essentially

identical, and therefore a court's analysis is substantially the same for both types of relief. *See In*

*re Donington, Karcher, Salmond, Ronan & Rainone*, 194 B.R. at 759-760 (citing

*Balcor/Morristown Ltd. P'Ship*, 181 B.R. at 788; *In re Joshua Slocum, Ltd.*, 109 B.R. 101, 105

(E.D. Pa. 1989)).

"The determination by a court of whether to exercise discretionary abstention and remand a matter is 'necessarily fact driven.'" *Mid-Atlantic Handling Sys., LLC*, 304 B.R. at 126 (citing *Balcor/Morristown Ltd. P'Ship*, 181 B.R. at 788). Various factors have been developed for the court to consider when determining whether to exercise its discretionary abstention power. Some courts rely on a twelve-part test, while others utilize a seven-part test.  *See In re Vanhook*, 468 B.R. 694, 700-01 (Bankr. D.N.J. 2012).

Although the Third Circuit has not formally adopted either of these sets of factors for analyzing permissive abstention, courts in this Circuit recognize that the "two sets of factors are substantially similar, and courts have stated that not all the factors necessarily need to be considered." *Shalom Torah Ctrs. v. Phila. Indem. Ins. Cos.*, 2011 WL 1322295, at * 4 (D.N.J. Mar. 31, 2011).  Accordingly, "courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Geruschat*, 331 B.R. at 221.

In deciding whether to abstain from hearing a matter, a court will consider the following factors in the seven-part test: 1) the effect on the efficient administration of the bankruptcy estate; 2) the extent to which issues of state law predominate; 3) the difficulty or unsettled nature of the applicable state law; 4) comity; 5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 6) the existence of the right to a jury trial; and 7) prejudice to the involuntarily removed defendants. *See Shalom Torah Ctrs.*, 2011 WL 1322295, at *4; *Jazz Photo Corp. ex rel. Moor v. Dreier LLP*, 2005 WL 3542468, at *7-8 (D.N.J. 2005); *In re Donington, Karcher, Salmond, Ronan & Rainone*, 194 B.R. at 760.

The twelve part test includes: (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues

predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties. *See In re Earned Capital Corp.*, 331 B.R. at 220; *In re Vanhook*, 468 B.R. at 701.

ANALYSIS

### A. Bankruptcy Court Jurisdiction

Ashland argues that it is merely asserting state law breach of contract causes of action, and that because this Court lacks subject matter jurisdiction, the proceeding should be resolved in state court. Ashland asserts that even if the Court finds that it has jurisdiction over the proceeding, both mandatory and permissive abstention warrant remand to the state court. On the other hand, G-I argues that the bankruptcy court has "arising in" jurisdiction or "related to" jurisdiction, at a minimum, and that neither mandatory nor permissive is warranted.

The well-pleaded complaint rule requires that the Complaint rely on federal law before the Court may find subject matter jurisdiction. *Rivet*, 522 U.S. at 475, 118 S. Ct. at 925. The implication of federal law as a defense is insufficient to produce subject matter jurisdiction in a

federal court. Ashland argues that the well-pleaded complaint rule precludes subject matter jurisdiction in this Court because the Complaint does not reference federal law. Pursuant to, *Giese v. Community Trust Bank*, the well-pleaded complaint rule is *only* applicable to an analysis of "arising under" bankruptcy court jurisdiction. 2015 WL 5299468, at *7 (citing *Am. Nat'l Red Cross*, 505 U.S. at 258; *In re McIntyre Bldg. Co.*, 2011 WL 1434691, at *10-12).

This Court here does not have "arising under" jurisdiction over the matter. The Complaint on its face does not assert causes of action under the Bankruptcy Code nor does the Complaint seek to invoke substantive rights provided for under the federal bankruptcy laws. "The fact that federal bankruptcy law is implicated as a defense to [Plaintiffs'] claim, does not change the fact that [Plaintiffs'] claim itself does not "arise under" title 11." *Faltas-Fouad*, 2015 U.S. Dist. LEXIS 7209, at *11. However, G-I argues that this Court has either "arising-in" or "related-to" subject matter jurisdiction. As such, the well-pleaded complaint rule is inapplicable to an analysis of subject matter jurisdiction over the present proceeding.

Courts generally hold that the bankruptcy court has "arising in" jurisdiction *only* if the proceeding would not exist outside the bankruptcy. *See In re Marcus Hook Dev. Park, Inc.*, 943 F.2d at 267. Although Plaintiffs' causes of action and G-I's defenses might necessitate interpretation of the Bankruptcy Code and Orders entered by this Bankruptcy Court, the action for breach of the 1996 Indemnification Agreement exists outside the bankruptcy. The other causes of action raised by the Complaint, a declaratory judgment as to liability, breaches of the implied covenant of good faith and fair dealing and unjust enrichment, similarly, exist outside of the bankruptcy. Because these causes of action exist outside of bankruptcy, this Court does not have "arising in" jurisdiction over the proceeding.

G-I argues that, at a minimum, the bankruptcy court has "related to" jurisdiction over the proceeding. A proceeding has "related to" jurisdiction if "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Pacor*, 743 F.2d at 994. In *Resorts International*, the Third Circuit held that "[a]t the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process – there must be a close nexus to the bankruptcy plan or proceeding." 372 F.3d at 167. "Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.*; *see In re Millennium Lab Holdings II, LLC*, Case No. 15-12284, at *8 (LSS) (Bankr. Del. Dec. 2, 2016) ("'Related to' jurisdiction post-confirmation includes proceedings to construe and enforce provisions of a plan, and matters affecting the interpretation, implementation, consummation, execution or administration of a confirmed plan."). Additionally, the Third Circuit and other courts routinely hold that a ruling requiring interpretation of a court's own orders confers jurisdiction on that court. *In re Sportsman's Warehouse Inc.*, 457 B.R. at 387.

G-I argues that because it has asserted an affirmative defense that Ashland's claims are barred by the Confirmation Order and Discharge Injunction, the court must interpret and apply the terms of the Plan, and therefore, the bankruptcy court has "related to" jurisdiction. G-I argues that Ashland's claims were discharged because they arose pre-petition and pre-effective date of the Debtors' Confirmed Plan. More specifically, G-I argues that Ashland's liability stems from the EPA's decision to pursue Ashland for environmental liabilities arising from pollution at the LCP Site. The pollution is alleged to have begun in the 1950s. Official action was taken against Ashland's predecessors in 1999 when the EPA issued the Administrative Order on Consent (AOC). *See State Court Complaint, supra*, at ¶¶ 14-18, Exhibit A at ¶¶ 8-9.

54

Therefore, G-I contends that Ashland's indemnification cause of action arose either when the pollution first began in the 1950s, or in 1999 when the AOC was entered. Accordingly, G-I characterizes Ashland's cause of action as an environmental claim that arose pre-petition and pre-effective date of the Confirmed Plan.

On the other hand, Ashland argues that its claim is merely a breach of contract claim that arose post-confirmation and post-effective date of the Plan when G-I first refused Ashland's demand for indemnification for money's spent in connection with the LCP Site remediation. Ashland did not file a proof of claim and argues that G-I expressly assumed the obligations under the 1996 Indemnification Agreement and that such claims cannot be barred by the Plan or its injunctive provisions. Ashland also points out that the Plan is substantially consummated but for certain residual claims resolution issues. These arguments raise a substantial question as to whether resolution of this dispute can supply the "close nexus" required by the *Resorts International* court to establish "related to jurisdiction." This Court recognizes that in some instances the mere implication of a Plan cannot meet the close nexus test, such as where "the dispute would have had no impact on any integral aspect of the bankruptcy plan or proceeding." *Resorts Int'l*, 372 F.3d at 168 (citing *Falise*, 241 B.R. 48; *In re Haws*, 158 B.R. 965, 970 (Bankr. S.D. Tex. 1993)). And although a party may ultimately succeed against a re-organized debtor on its action for indemnity, the potential for a post-petition indemnity judgement alone is also insufficient to automatically establish "related to" jurisdiction. *See Lichtenfels v. Electro-Motive Diesel, Inc.*, No. CIV. A. 09-1590, 2010 WL 653859, at *5 (W.D. Pa. Feb. 22, 2010) (citing *In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009)).[13] As noted in the *Lichtenfels* case, a case-by-

---

[13] In *W.R. Grace & Co.*, the Third Circuit noted:

> [W]e do not mean to imply that contractual indemnity rights are in themselves sufficient to bring a dispute over that indemnity within the ambit of related-to jurisdiction. What will or will not be

case analysis involves evaluating the relative severity of the proceeding's impact upon the activities of a bankruptcy estate. *Id.*

Here, however, although the litigation in large part involves application of state contract and corporate law, G-I posits a scenario that may require interpretation of the Plan and the application of the bankruptcy law concerning discharge. A court deciding these issues may have to determine the timing of Ashland's claims and whether 11 U.S.C. § 1141(a) of the Bankruptcy Code bars such claims under *res judicata* as applied in bankruptcy cases. *See Donaldson*, 104 F. 3d at 544-45 ("a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation") (quoting *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989)); *see also In re G-I Holdings, Inc.*, 514 B.R. 720, 751 (Bankr. D.N.J. 2014); *In re Target Industries, Inc.*, 328 B.R. 99, 115 (Bankr. D.N.J. 2005) ("Although the contours of a bankruptcy case make its application somewhat more difficult in other contexts, the doctrine of *res judicata* is fully applicable to bankruptcy court decisions…[and] is applicable to final orders issued by the bankruptcy court.").    Accordingly, this Court finds that pursuant to *Resorts International* and its progeny, G-I's affirmative defense satisfies the "close nexus" test. This Court has related to subject matter jurisdiction over the proceeding.

**B. Abstention**

Although this Court has "related to" jurisdiction, such jurisdiction is subject to mandatory and permissive abstention. Both mandatory and permissive abstention is appropriate in the current proceeding. Abstention is mandatory if (1) a timely motion is made; (2) the proceeding is

---

sufficiently related to a bankruptcy to warrant the exercise of subject matter jurisdiction is a matter that must be developed on a fact-specific, case-by-case basis.

591 F.3d at 174 n. 9.

based upon a state law claim or cause of action; (3) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 or "arise in" a case under title 11; (4) federal courts would not have jurisdiction absent its relation to a bankruptcy case; (5) an action is "commenced" in a state forum of appropriate jurisdiction; and (6) the action can be timely adjudicated in the state forum. *In re Exide Techs.*, 544 F.3d at 218 n.14 (citing *Stoe*, 436 F.3d at 213).

Here, all the factors for mandatory abstention are met. Ashland made a timely motion to remand. Ashland properly commenced this action in the Superior Court of New Jersey, Morris County, where the Defendants are located. Ashland's Complaint asserts state law claims for breach of contract and other related relief. Although the claims relate to the bankruptcy because G-I's defenses potentially involve application of the Confirmation Order and Plan and Discharge Injunction, the claims do not "arise under" or "arise in" the G-I bankruptcy cases. Federal courts would not have jurisdiction over this action absent its relation to the bankruptcy case. The final factor is whether Ashland's claims can be timely adjudicated in state court. "This analysis must consider not only the relative efficiencies of state and federal court, but must focus upon the needs of the title 11 case." *Lichtenfels*, 2010 WL 653859, at *8 (citing *Stoe*, 436 F.3d at 219-20). "The question is not whether the action would be more quickly adjudicated in the bankruptcy court than in state court, but rather, whether the action can be timely adjudicated in the state court." *In re Exide Techs.*, 544 F.3d at 218 n.14. Additionally, the following four factors have been considered by courts assessing the timeliness issue: (1) backlog of the state court's calendar; (2) status of the bankruptcy proceeding; (3) complexity of issues; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Carriage House*, 415

B.R. at 144; *see also Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).

Here, Ashland properly filed its Complaint in the Superior Court of New Jersey, Morris County. The case was directed to the Superior Court of New Jersey's Complex Business Litigation Program, which was created specifically for specialized attention to commercial cases, such as the instant matter. Moreover, the New Jersey Rules of Court permit expeditious resolution of such claims. N.J. Ct. R. 4:67, *et seq.* Indeed, before this case was removed to this Court, Ashland filed a Motion to Proceed Summarily before Judge Hansbury. The state court is therefore fully equipped to handle the claims asserted in this case in a timely manner.

Nor does this Court find that the claims are too complex for the state court forum. G-I asserts that this matter involves complex bankruptcy issues based upon its affirmative defense that the Confirmation Order and Discharge Injunction bar Ashland's claim. However, the Superior Court is fully capable to look to the Plan's discharge provisions to determine whether G-I's affirmative defense applies. Indeed, "discharge in bankruptcy" is an expressly enumerated affirmative defense under the New Jersey Rules of Court. N.J. Ct. R. 4:5-4. Further, state courts are often called upon, and are indeed sometimes obligated to interpret federal statutes. *See, e.g., Manhattan Woods Golf Club v. Arai*, 312 N.J. Super. 573, 576-78 (App. Div. 1998) (state court interpreted confirmation order to determine whether it had jurisdiction); *Wilkerson v. C.O. Porter Machinery Co.*, 237 N.J. Super. 282, 285-88, 293-99 (Law Div. 1989) (state court interpreting bankruptcy sale order and code provisions). To the extent that the state court may need to interpret the Plan in connection with G-I's affirmative defenses, this Court finds that the Superior Court of New Jersey is fully capable of doing so. Finally, the fact that G-I's Plan was

58

confirmed some seven years ago and is nearly fully consummated substantially supports abstention. For those reasons, mandatory abstention is required.

Alternatively, if mandatory abstention did not apply, permissive abstention would apply to the instant proceeding. Under the "permissive abstention" doctrine, bankruptcy courts "have broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law." *In re Gober*, 100 F.3d at 1206. While many of the relevant factors have already been discussed in the preceding section, the analysis here is more substantially grounded in equity. Here, G-I's Plan was confirmed some seven years ago and is virtually fully consummated with the exception of certain residual claims proceedings. Bankruptcy court jurisdiction does not extend indefinitely after confirmation. *In re Superior Air Parts, Inc.*, 516 B.R. at 98 ("Simply because a debtor was once in bankruptcy does not mean that the bankruptcy court is an in appropriate forum in which to litigate post-confirmation disputes."). Although this Court acknowledges the long history of G-I's bankruptcy case before this Court, the bankruptcy court will not oversee proceedings involving reorganized debtors indefinitely. *See Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991) ("Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the *protection* of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens."). This action primarily concerns resolution of a state law breach of contract claim and other related relief. Although resolution of the action may necessarily require interpretation of the Bankruptcy Code and Confirmed Plan, the state court is fully capable of resolving claims, such as this, that may require interpretation of Bankruptcy Court orders. Further, the resolution of this case will not affect the distribution to creditors and is

unlikely to unduly impact the administration of the estate.  Additionally, BMCA, a defendant in this action, is not a debtor.  The fact that BMCA is not a debtor in the Bankruptcy Court similarly weighs in favor of abstention.  *See In re Semcrude*, 442 B.R. at 276.  For these reasons, permissive abstention is appropriate.

CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is hereby GRANTED.

An order shall be submitted in accordance with this Decision.

DATED:  December 21, 2016

_____
ROSEMARY GAMBARDELLA
UNITED STATES BANKRUPTCY JUDGE